**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **JOHN J. SANTINI,,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO. 07-0130-CG-B** |
| ) | |
| **CYTEC INDUSTRIES, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motions of defendant, Cytec Industries, Inc.

("Cytec") for summary judgment (Docs. 31, 59), plaintiff's opposition thereto (Docs. 38, 50, 69),

plaintiff's motion for summary judgment as to defendant's counterclaim (Doc. 63), Cytec's

opposition thereto (Doc. 68), and the replies of both parties in support of their motions (Docs.

42, 52, 70, 71). The court finds that Cytec's motions for summary judgment are due to be

**GRANTED** as to **Counts One, Two, Three** and **Five** but **DENIED** as to **Count Four**, and its

previously asserted **Counterclaim**. The court further finds that plaintiff's motion for summary

judgment as to Cytec's **Counterclaim** is **MOOT**, as Cytec has not asserted a counterclaim in

relation to plaintiff's currently pending amended complaint.


## I. FACTS

### A. Procedural History

The plaintiff in this action, John Santini, originally filed this case in the Circuit Court of

Mobile County, Alabama, asserting four Counts: 1) Cytec terminated plaintiff because of his age

in violation of Alabama Code § 25-1-21 et. seq., 2) Cytec constructively discharged plaintiff because of his age in violation of Alabama Code § 25-1-21 et. seq., 3) Cytec discriminated against plaintiff and/or retaliated against plaintiff on the basis of his age in violation of Alabama Code § 25-1-21 et. seq., and 4) Cytec breached plaintiff's employment agreement. (Doc. 1). Cytec removed the case on the basis of diversity of citizenship. (Doc. 1).  On February 21, 2007, Cytec answered the original complaint and asserted a counterclaim alleging that plaintiff has been unjustly enriched and is in breach of contract by receiving retirement and/or severance benefits he is not entitled to. (Doc. 4).  On May 16, 2007, plaintiff amended his complaint. (Doc. 25).  The amended complaint asserts all four of plaintiff's original Counts and adds a fifth Count which asserts that Cytec's refusal to pay severance benefits violates ERISA. (Doc. 25).  On May 31, 2007, Cytec filed an answer to the amended complaint that did not include a Counterclaim but otherwise appeared complete - addressing each and every allegation by plaintiff and asserting affirmative defenses. (Doc. 28).  The answer to the amended complaint did not refer in anyway to Cytec's previous answer.  On July 20, 2007, Cytec filed a motion for summary judgment as to Counts Three, Four and Five. (Doc. 31).  Then, on November, 19, 2007, Cytec filed a motion for summary judgment as to plaintiff's remaining claims (Counts One, Two, and Three) and as to Cytec's counterclaim. (Doc. 59).  On that same date, plaintiff filed a motion for summary judgment as to Cytec's counterclaim.


**B. Plaintiff's Position at Cytec**

Plaintiff, who was born October 25, 1946, began employment with Cytec in June 1968.(Doc. 25, ¶ 6).  Plaintiff worked in procurement for Cytec at its Mobile, Alabama, location

from January 1, 1993, until he was terminated on December 31, 2006.[1]  (Doc. 25, ¶ 6).  Cytec is

organized into a number of different business units. (Doc. 25, ¶ 7).  The Mobile office was

primarily concerned with the water treatment division of Cytec.   Plaintiff  handled the non-

strategic day-to-day procurement activities for the Mobile plant, (Hain Depo. pp. 10, 24), but his

duties extended to other divisions of Cytec such as the R&D division in Stamford, Connecticut.

He was globally responsible for mining chemicals and alumina processing chemicals. (Santini

Depo. pp 68-69, Santini Aff.).  According to plaintiff's supervisor, approximately 50% of

plaintiff's time was spent on activities for the Mobile facility. (Hain Depo. pp 17-19).


**C. The Sale of Cytec's Water Treatment Product Lines**

On or about July 17, 2006, Cytec publicly announced that it was selling its water

treatment product lines to an unrelated company named Kemira Group ("Kemira"). (Marosits

Aff. ¶ 2).  Prior to the public announcement, Cytec and Kemira entered into an Asset and

Purchase Agreement ("APA") regarding the sale to Kemira. (Marosits Aff. ¶ 3).  The sale

included four of Cytec's manufacturing sites, including the Mobile facility. (Morosits Aff. ¶ 3).

Kemira agreed to offer employment to all Cytec employees necessary for the continued

operation of the water treatment product line and Mobile facility. (Marosits Aff. ¶ 3).  The APA

states that prior to the closing date, Kemira will offer employment on an at will basis, effective

on the day following the closing date, in a comparable position, within 50 miles of their current

---

[1] There appeared to have originally been some dispute as to whether plaintiff was actually terminated by Cytec.  However, Cytec has clearly acknowledged in its briefs and affidavits that plaintiff was terminated. See e.g. Doc. 70, p. 4 ("It remains undisputed that Plaintiff was terminated and knew he would be terminated if he rejected Kemira's offer." citing the affidavit of Marosits and Plaintiff's Deposition; see also Marosits Depo. p. 44).

location, at no less favorable base salary and annual bonus arrangements and make available such benefits to each U.S. employee other than ones receiving long-term disability benefits and employees on short-term disability leave from active employment. (APA § 6.08(a)).  Under the APA, Kemira could not, for a period of two years, adversely amend or alter the annual salary, annual bonus or benefits provided to employees that accepted its job offer. (APA § 6.08(n)).  The APA further restricts Kemira for a period of two years, from hiring as an employee or consultant any U.S. employee who does not accept Kemira's job offer of employment pursuant to section 6.08(a). (APA § 6.08(d)).

**D. Plaintiff's Offer of Employment with Kemira and Plaintiff's Termination/Retirement**

Cytec identified five employees who were involved in designating which Cytec employees were essential to the water treatment product line and the continued functioning of the Mobile facility: Joseph Marosits, John Harrison, Scot Hain, Steve Fisher, and Marc MaCaulay. (Doc. 69, Ex. 5, p. 4).  According to Cytec, plaintiff was chosen to go with Kemira because he was an experienced procurement person and was at the Mobile site - "he was the logical person to go."  (Marosits Depo. p. 72).  Cytec contends that plaintiff was deemed essential to the water treatment product line. (Doc. 69, Ex. 5, p. 5).  By letter dated September 29, 2006, Kemira offered employment to plaintiff at his current salary and same location. (Marosits Aff. ¶ 6, Ex. A).  After receiving the offer of employment, plaintiff asked Cytec whether he could retain his position with Cytec and was advised that he would no longer have a position at Cytec, that he must accept the position or retire. (Marosits Aff. ¶ 6, Santini Depo. pp. 142-143, 249-50, 275-276).  Plaintiff rejected the job offer from Kemira and applied for

retirement benefits from Cytec. (Marosits Aff. ¶ 6, Marosits Depo. p.p 52-53).  Plaintiff was the

only employee at the Mobile facility that did not accept Kemira's job offer. (Marosits Aff. ¶ 5).

Pursuant to Cytec's Retirement Plan, an employee is not considered retired if he becomes

employed by a purchaser. (Cytec's Salaried and Non-bargaining Employees' Retirement Plan, §

3.6).  Cytec's Severance Pay Program states that severance is not payable if the terminated

employee declines employment with a successor. (Marosits Aff. ¶ 6).  Pursuant to the severance

policy, Cytec provides severance pay to eligible employees whose employment is terminated for

reasons other than activities prejudicial to Cytec. (Marosits Aff. ¶ 7).  These provisions were for

the purpose of preserving the business unit as a whole. (Marosits Depo. p. 19).

Plaintiff had a written employment agreement with Cytec which provided for six months

written notice of termination.  After first refusing to honor the contract as "too old," Cytec

allowed plaintiff to spend three months as a Cytec employee assisting Kemira with the transition

and was told he would be paid the remaining three months of the notice in a lump sum. (Santini

Depo. p. 144; Marosits Depo. pp. 54, 56-60).

In January and February 2007, plaintiff worked for Long's temporary agency and was

assigned to assist Kemira.  Beginning March 1, 2007, plaintiff began consulting for Kemira

(Santini Depo. pp 23, 24-25, 38-39, 290).


**E. Cytec's Retention of Other Employees**

Another Supply Chain employee for Cytec, Kathery Zhang, was the Americas division

lead for water treating. (Doc. 64, Exs. 7-8; Marosits Depo. pp. 73-74; Zhang Depo. p. 30).  Ms.

Zhang did not work out of the Mobile site and was retained by Cytec and given plaintiff's

mining chemicals duties. (Doc. 63, Exs. 13, 14, Marosits Depo. p. 74).  Plaintiff's other

packaging duties were given to another employee, Wayne Kudwa. (Doc. 63, Ex. 15).

Plaintiff submitted a copy of an e-mail, dated June 28, 2006, from Marc Macaulay to

David Lauber which attaches another e-mail, dated June 2, 2006, from Mr. John Harrison to Jeff

Futterman, Raymond Heslin, and Marc Marcaulay. (Doc. 69, Ex. 22).  The second e-mail

discusses the need to provide the names of Supply Chain personnel[2] that are to be "terminated

from Cytec as part of Barolo[3]" and the need to retain certain other employees. (Doc. 69, Ex. 22,

p. 1).  The e-mail states that, as to the Supply Chain personnel in Mobile, "everyone goes [to the

purchasing company] with exception of Chris Johnson (NA DC mgmt)." (Doc. 69, Ex. 22, p. 1).

The attached e-mail lists under Procurement as those to be severed from company at Botlek as

"One of Berkel, Lageweg...whichever is closest to retiring." (Doc. 69, Ex. 22, p. 2).   The

attached e-mail also lists as names of people that will stay at Botlek: "Procurement: One of

Berkel, Lageweg, presumably the one that is not nearest retirement." (Doc. 69, Ex. 22, p. 2).


**F. Cytec's Severance Plan**

Cytec's Severance Plan provides that "Cytec may, in its sole discretion, provide

severance pay to eligible employees whose employment is terminated for reasons other than

activities prejudicial to Cytec." (Doc. 31, Ex. 1(B), p. 1).  The Severance Plan specifically

---

[2] The first e-mail explains that the second, attached,  e-mail as identifies Supply Chain
personnel to be terminated at the "Botlek" site as part of the Barolo transaction.  Although the
parties do not specify, the court presumes that the "Botlek" site is at Botlek in the Netherlands.

[3] "Barolo" is a code word for the sale of the water treating product lines. (Marosits Depo.
p. 95).

excludes from the severance policy employees who: "were offered but refused to accept another reasonably comparable (in terms of location, compensation, and job level) position with the organization" or "were provided the opportunity to be retained by a successor employer." (Id.)

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."   See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).   In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving

party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Termination Because of Age in violation of ALA. CODE § 25-1-21**

Plaintiff alleges that he was terminated based on his age in violation of Alabama's Age Discrimination in Employment Act, ALA.CODE § 25-1-20 et seq. (AADEA).   The same order and allocation of proof in cases under Title VII govern suits under the AADEA. Bonham v.

Regions Mortgage, Inc., 129 F.Supp.2d 1315, 1321 (M.D. Ala. 2001); see also Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000), Dooley v. AutoNation USA Corp., 218 F.Supp.2d 1270, 1277 (N.D. Ala. 2002); Smith v. City of Mobile, 2007 WL 2580516, *11 (S.D. Ala. Sep. 5, 2007).

      A plaintiff may prove discrimination by relying on either direct, circumstantial, or statistical evidence. Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1555 (11th Cir. 1995). Plaintiff has not offered any statistical evidence to demonstrate that older employees have been discriminated against; nor does the court find that any of the evidence submitted by plaintiff constitutes direct evidence. Direct evidence is evidence which, "if believed, proves the existence of discriminatory motive 'without inference or presumption'" Hamilton v. Montgomery County Bd. of Educ., 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000) (quoting Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998)). As the District Court for the Middle District of Alabama explained:

> Not only must it be evidence of discriminatory 'actions or statements of an employer' but the actions or statements at issue must 'correlat[e] to the discrimination or retaliation complained of by the employee.' Further, the statements 'must be made by a person involved in the challenged decision' and must not be subject to varying reasonable interpretations.

Id. (quoting Lane v. Ogden Entertainment, Inc., 13 F.Supp.2d 1261, 1274 (M.D. Ala. 1998)). Plaintiff presented evidence that persons involved in the decision to terminate plaintiff communicated in an e-mail that one of two employees in procurement, named Berkel and Lageweg, would be terminated, and that the one terminated would presumably be the employee closest to retiring. Perhaps such evidence would constitute direct evidence of a discriminatory motive with regard to Berkel and Lageweg. However, the evidence does not directly demonstrate that age was a factor in Cytec's decision to terminate plaintiff. The court finds that none of the evidence submitted by plaintiff constitutes direct evidence.

      Plaintiff can show age discrimination based on circumstantial evidence through the application of the McDonnell Douglas burden-shifting analysis established by the Supreme

Court. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Under the <u>McDonnell Douglas</u> framework, a plaintiff must first raise an inference of discrimination by establishing a <u>prima facie</u> case. <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1527-28 (11th Cir. 1997)).  A plaintiff may establish a <u>prima facie</u> case of discriminatory discharge by showing that he:

> (1) was a member of the protected age group,
>
> (2) was subjected to adverse employment action,
>
> (3) was qualified to do the job, and
>
> (4) was replaced by or otherwise lost a position to a younger individual.

<u>Id.</u> (citing <u>Benson v. Tocco, Inc.</u>, 113 F.3d 1203, 1207-08 (11th Cir. 1997).

If plaintiff establishes a <u>prima facie</u> case, the burden shifts to the defendant, who must then "proffer a legitimate, non-discriminatory reason for the adverse employment action. The employer's burden is exceedingly light." <u>Hamilton</u>, 122 F.Supp.2d at 1280 (quoting <u>Meeks v. Computer Assoc. Int'l</u>, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotations omitted)).  If the defendant proffers a legitimate reason for plaintiff's termination, the burden then shifts back to plaintiff, who must show that the employer's proffered reasons are pretextual, or merely a cover for discrimination. <u>Id.</u>  "At the pretext stage, in order to survive summary judgment, Plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." <u>Miller v. Bed, Bath & Beyond, Inc.</u>, 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing <u>Combs</u>, 106 F.3d at 1538).  Plaintiff may do this by (1) "showing that the employer's legitimate nondiscriminatory reasons should not be believed; or" (2) "showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." <u>Id.</u> (citations omitted). "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.'" <u>Hamilton</u>, 122 F.Supp.2d at 1281 (quoting <u>Combs</u>, 106

10

F.3d at 1539).  The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In satisfying the ultimate burden of proving that the discharge was on account of age, a plaintiff need not establish that age was the sole reason for termination, but that it was a determinative factor in the employer's decision. Anderson v. Savage Laboratories, Inc., 675 F.2d 1221, 1224 (11th Cir. 1982) (citing Haring v. CPC International, Inc., 664 F.2d 1234, 1239-40 (5th Cir. 1981)).  However, it should be noted that federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." Chapman, 229 F.3d at 1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).  It is not appropriate for either the plaintiff or this court to "recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer." Id..  An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Communication, 738 F.2d 1181, 1187 (11th Cir. 1984).

Plaintiff has clearly established two of the above listed prongs of a prima facie case, as there is no dispute that plaintiff was a member of a protected age group and that he was qualified to do the job.  It is questionable whether plaintiff was subjected to an adverse employment action since he was offered a comparable position with Kemira, but looking at the facts in the light most favorable to plaintiff, the court finds that his termination from Cytec was adverse.   Even assuming that an offer from the purchasing company is analogous to a lateral transfer in which plaintiff's pay and location remained the same, the responsibilities in the new position were materially less than plaintiff's position at Cytec.

There is also some dispute as to whether plaintiff was replaced by a younger individual. Cytec asserts that  plaintiff's position was eliminated and, thus, that a different standard applies. Cytec argues that "[w]here a particular position is entirely eliminated for nondiscriminatory

reasons, in order for a plaintiff to prevail against his employer, he must establish an additional

element—that he applied for and was qualified for another available job with that employer.

Earley v. Champion Int'l Corp., 907 F.2d 1077, 1082-83 (11th Cir. 1990); Langston v. Carraway

Methodist Hospitals of Alabama, Inc., 840 F. Supp. 854 (N.D.Ala. 1993)." (Doc. 60, p. 13).

Plaintiff argues that many of his duties were not eliminated but were assumed by younger

employees.   In the first case cited by Cytec, Earley, the plaintiff was terminated when two

companies merged resulting in the elimination of 98 positions. 907 F.2d at 1079-80.   Unlike

plaintiff's position at Cytec, most of the plaintiff's duties in Earley were transferred to a

computerized inventory control system. Id at 1083.   However in Langston, the plaintiffs' duties

were assumed by other personnel within the defendant company. 840 F.Supp. at 864, n 10.   This

second case cited by Cytec is more analogous to the circumstances here.   The plaintiffs in

Langston, like the plaintiff in this case, argued that their jobs had not been completely eliminated

and therefore that their situation was distinguishable from Earley.   The Northern District of

Alabama disagreed, explaining as follows:

> This argument is unavailing because, like in Early, the "positions" of Simmons
> and Langston were "entirely eliminated." Following the reorganization, there was
> no longer a Director of Central Services or a Director of Transportation. There
> was instead a Director of the Pharmacy Department whose responsibilities
> encompassed those he had before the reorganization plus those previously held by
> Mr. Simmons. In the case of Mr. Langston, following the reorganization, the ...
> positions of Technical Director of Nuclear Medicine and Technical Director of
> Radiation Oncology no longer existed. In the reorganization, the functions
> formerly performed by those two departments were merged into and assumed by,
> respectively, the new Department of Imaging Services and the Cancer Center. Just
> as in Early, the plaintiffs' positions were eliminated. The functions formerly
> performed by persons holding those positions remained but were performed in a
> different manner.

Id.  Presumably, most reduction-in-force cases entail the assumption by other employees of the

duties previously performed by the complaining parties.   Only where the tasks performed by

employees were streamlined or simplified by new technologies or procedures would their duties

not have to be reassigned.   The court is persuaded by the rational in Langston that plaintiff's

position at Cytec should be considered completely eliminated and, thus, that the prima facie case

put forth in <u>Earley</u> for job-reduction cases should apply.  But <u>see</u> <u>Phillips v. Aaron Rents, Inc.</u>, 2008 WL 111038, *7 (11th Cir. Jan. 11, 2008) (finding that <u>prima facie</u> case was met where plaintiff's job title had been eliminated but a younger employee had assumed some of plaintiff's duties).

> Generally, a plaintiff in a job-reduction case can establish a prima facie case by demonstrating (1) that he was in a protected age group and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue.

<u>Earley</u>,  907 F.2d at 1082 (citations omitted).   Plaintiff has produced no evidence from which a factfinder could conclude that he was qualified to fill any position which was available at the time he was terminated.   Plaintiff has failed to establish that a position for which he was qualified was available in the company at the time Cytec terminated his employment. ""[N]othing in the ADEA requires that younger employees be fired so that employees in the protected age group can be hired." <u>Id.</u> (citing <u>Barnes v. Southwest Forest Industries, Inc.</u>, 814 F.2d 607, 610 (11th Cir. 1987).   Thus, the fact that younger employees assumed some of plaintiff's duties is unavailing.  Although plaintiff could have terminated these younger employees instead, Cytec was not required to displace those employees in order to make a place for plaintiff. <u>Langston</u>, 840 F.Supp at 865.

Even if plaintiff could establish a <u>prima facie</u> case, Cytec has offered a legitimate nondiscriminatory reason for choosing to send plaintiff to Kemira and sever his employment with Cytec.  According to Cytec, plaintiff was chosen to go with Kemira because he was an experienced procurement person and was at the Mobile site - "he was the logical person to go." Cytec determined that all but one employee at the Mobile facility (which included more than 100 employees) would go to Kemira and remain with the Water Treatment Line.   Cytec contends that plaintiff was deemed essential to the water treatment product line and his position was therefore transferred to Kemira with the sale of that business.  Plaintiff contends that pretext is

shown by the e-mail that states that "[o]ne of Berkel, Lageweg...whichever is closest to retiring" should be severed from the company.    However, as discussed above with regard to whether such evidence constitutes direct evidence, that e-mail demonstrates little towards Cytec's basis for eliminating plaintiff.    The employees referred to, Berkel and Lageweg, appear to have been employed at a location in the Netherlands where, presumably different law applies.    In addition, that same e-mail also states that everyone in Mobile, except one, would go to Kemira.    This statement supports Cytec's contention that they chose plaintiff because he was at the Mobile site.

Plaintiff also posits that it would have made more sense to eliminate other employees because although they were not located in Mobile, they had other duties related to the Water Treatment Line and could have easily taken over plaintiff's Water Treatment duties.    However, as stated above, it is not appropriate for either the plaintiff or this court to "recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer."    The court finds that plaintiff has not met his burden of showing that Cytec's legitimate nondiscriminatory reasons should not be believed; or that a discriminatory reason more likely motivated or influenced the decision.    Therefore, the court finds that summary judgment is due to be **GRANTED** in favor of Cytec as to **Count One** of plaintiff's amended complaint.

## C. Constructive Discharge in Violation of ALA. CODE § 25-1-21

Plaintiff acknowledges that if he is found to have been terminated, his alternative constructive discharge claim is moot.    The parties agree that plaintiff was terminated.    See footnote 1.    Accordingly, Count Two of plaintiff's amended complaint, alleging constructive discharge,  is moot, and summary judgment will be **GRANTED** in favor of Cytec as to **Count Two**.

## D. Discrimination and/or Retaliation in Violation of ALA. CODE § 25-1-21

In Count Three of the amended complaint, plaintiff asserts that the APA which prohibited

14

Kemira from employing plaintiff except pursuant to the agreement, constitutes unlawful age discrimination and/or retaliation in violation of Alabama Code § 25-1-21 et. seq. (Doc. 25, ¶¶ 25-26).   Cytec counters that the APA cannot constitute retaliation because it was entered into before plaintiff rejected the job with Kemira and was fired., and that, additionally, the APA does not single out plaintiff or somehow compel disparate treatment of older employees.  Plaintiff acknowledges that he does not challenge the sale of the water treating business as a whole, but only the decision to include him in that sale. (Doc. 69, p. 12).   The APA did not expressly state or otherwise mandate that plaintiff must be included in the sale.   Thus, it appears that Count Three simply restates plaintiff's claim that Cytec decided plaintiff would be severed from employment with Cytec because he was closest to retirement.   The evidence indicates that plaintiff was given the option to go to work for Kemira voluntarily or be terminated.   Although plaintiff's actual termination date is after he was offered a position with Kemira, the evidence indicates that there is no distinction between the decision to include him in the sale and the decision to terminate plaintiff.  The same evidence submitted and discussed above as to Count One would apply to Count Three as well.  Thus, to the extent Count Three constitutes a claim separate from Count One, the court finds that it fails for the same reasons that Count One fails. Thus, summary judgment is also due to be **GRANTED** in favor of Cytec as to **Count Three.**

**E. Breach of Employment Contract**

Plaintiff asserts in Count Four that Cytec breached his employment contract by failing to pay severance benefits.  Defendant asserts that plaintiff's breach of contract claim is preempted by ERISA.   Congress enacted ERISA, 29 U.S.C. § 1001 et seq. , to protect "the interests of participants in employee benefit plans and their beneficiaries...." 29 U.S.C. § 1001. ERISA contains a preemption provision, expressly stating that ERISA preempts any state law claim relating to an employee benefit plan covered by ERISA. 29 U.S.C. § 1144.  ERISA's preemption is broadly construed. Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1281 (11th Cir.

2005).  This court considers four elements when deciding whether state law claims are completely preempted: (1) There must be a relevant ERISA plan; (2) the plaintiff must have standing to sue under that plan; (3) the defendant must be an ERISA entity; and (4) the complaint must seek compensatory relief akin to that available under § 1132(a), which is normally a claim for benefits under the plan.  Ervast v. Flexible Prods. Co., 346 F.3d 1007, 1012-13 (11th Cir. 2003).

In the instant case, there appears to be an ERISA Plan[4] that provides for severance payments to employees under certain circumstances.  Additionally, it is clear that plaintiff's breach of contract claim seeks severance payments.  However, Count Four alleges that plaintiff entered into an employment contract and that Cytec breached the terms of that contract.  There has been no suggestion that plaintiff's employment agreement is an ERISA plan.  The employment contract, which was entered into on June 17, 1968,  provides for certain notice periods, based on the length of employment, before Cytec terminates plaintiff. (Doc. 1, Attachment to Complaint).  The employment contract further provides that Cytec may pay plaintiff his full base salary for or during the required notice period and terminate plaintiff in lieu of providing the required notice period.  The employment agreement does not contain the exclusionary language under which Cytec asserts plaintiff is excluded under the Plan.  The question, then, is whether a claim under a separate agreement that does not refer to the ERISA Plan is preempted by ERISA.

A similar issue was encountered in Cefalu v. B.F. Goodrich Co., 871 F.2d 1290 (5th Cir. 1989).  In Cefalu, the employer entered into an agreement to sell to another company all of its assets in the division in which Cefalu worked.  Id. at 1291. Cefalu was advised that he would be terminated, but he was given several options.  Id.  Cefalu chose to purchase a franchise from his

---

[4] An ERISA plan is defined as (1) a plan, fund, or program, (2) established or maintained, (3) by an employer or by an employee organization or both, (4) to provide beneficiaries, (5) with severance benefits. See Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1214 (11th Cir. 1999).

employer and was orally assured that his retirement benefits as a franchisee would be identical to

those of employees who had accepted jobs with the new company. Id. at 1291-1292.  Plaintiff

sued his employer, rather than the plan, and sought recovery directly from his employer pursuant

to the oral agreement.  The Fifth Circuit found that Cefalu's claim relates to the ERISA plan and

was therefore preempted. Id. at 1295.  The Court reasons as follows:

> We find that appellant's state law contract claim falls within the preemptive scope
> of § 1144(a) of ERISA because it "relate[s] to" an employee benefit plan. A state
> law claim "relate[s] to" a benefit plan if it has a "connection with or reference to
> such a plan." FN22 Appellant's claim has a definite connection to an employee
> benefit plan. Plaintiff concedes that if he is successful in this suit his damages
> would consist of the pension benefits he would have received had he been
> employed by TCI. To compute these damages, the Court must refer to the pension
> plan under which appellant was covered when he worked for Goodrich. Thus, the
> precise damages and benefits which appellant seeks are created by the Goodrich
> employee benefit plan. To use any other source as a measure of damages would
> force the Court to speculate on the amount of damages.

Id. at 1294 (footnote omitted).  The Fifth Circuit then discussed many cases which had come to

the same conclusion when considering similar claims. Id. at 1295 (citing Jackson v. Martin

Marietta, 805 F.2d 1498, 1499 (11th Cir. 1986); Hermann Hospital v. MEBA Medical Benefits

Plan, 845 F.2d 1286 (5th Cir. 1988); Anderson v. John Morrell & Co., 830 F.2d 872 (8th Cir.

1987); Straub v. Western Union Telegraph Co., 851 F.2d 1262 (10th Cir. 1988); Phillips v.

Amoco Oil Co., 799 F.2d 1464 (11th Cir. 1986) cert. denied, 481 U.S. 1016, 107 S.Ct. 1893, 95

L.Ed.2d 500 (1987); Pane v. RCA Corp., 667 F.Supp. 168 (D.N.J. 1987)).  However, in Cefalu

and all of the cases cited by Cefalu, the contract at issue promised or referred to benefits

available under the ERISA plan.  In the instant action, the agreement at issue does not promise to

provide benefits under the Plan or refer to the Plan in any way.  Plaintiff's employment contract

agrees to provide a notice period and/or payments upon termination, calculated according to the

terms stated in the employment contract.  Thus, plaintiff's breach of contract claim does not seek

payment of benefits under the Plan   As such, Cytec has not shown that plaintiff's breach of

contract claim is preempted. See Cantrell v. Currey, 407 F.Supp.2d 1280 (M.D. Ala. 2005)

(dismissing breach of contract and fraud claims that were based on an oral promise that

employees would be eligible for severance pay under the ERISA plan, citing <u>Cefalu</u>, but allowing breach of contract and fraud claims based on an oral promise of bonuses and commissions that do not refer to or rely on the plan for calculation).  Therefore Cytec's motion for summary judgment is due to be **DENIED** as to **Count Four**.


**F. Failure to Pay Severance Benefits in Violation of ERISA**

In Count Five, plaintiff asserts that Cytec's failure to pay severance benefits violates ERISA.  The Severance Plan in this case states that "Cytec may, in its sole discretion" provide severance pay.  Thus, the Plan grants Cytec broad discretion to determine whether to provide severance pay.  As such, the arbitrary and capricious standard of review is appropriate in this case because "the plan documents at issue explicitly grant the claims administrator discretion to determine eligibility or construe terms of the plan." <u>HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co.</u>, 240 F.3d 982, 992 (11th Cir. 2001) (discussing <u>Firestone</u>) (citations omitted).

However, that does not end the analysis on the standard to be applied.   If the plan administrator was acting under a conflict of interest, the arbitrary and capricious deference is diminished.  <u>HCA</u>, 240 F.3d at 993 (quoting <u>Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield</u>, 41 F.3d 1476, 1481 (11th Cir. 1995)).   The court should adopt a "heightened arbitrary and capricious" standard of review where there is a conflict of interest. <u>Id.</u> (quoting <u>Buckley v. Metropolitan Life</u>, 115 F.3d 936, 939 (11th Cir. 1997)).   The parties have offered no evidence or argument regarding the plan administrator's interest, but looking at the evidence in the light most favorable to plaintiff, as the non moving party, the court will presume that Cytec, has a conflict of interest.  Accordingly, the court finds that the heightened arbitrary and capricious standard applies.

Regardless of  whether the "regular" or "heightened" arbitrary and capricious review applies,  the next step in evaluating the decision is to determine whether it was "wrong." <u>HCA</u>,

240 F.3d at 993 (citations omitted). "It is fundamental that the fiduciary's interpretation first must be 'wrong' from the perspective of <u>de novo</u> review before a reviewing court is concerned with the self-interest of the fiduciary." <u>Brown v. Blue Cross</u>, 898 F.2d 1556, 1567 n. 12 (11th Cir. 1990).

> [T]he court must decide whether the Plan Administrator's interpretation is "wrong" under a de novo standard. [<u>HCA</u>, 240 F.3d at 993.] If the Administrator is "right," the Defendants are entitled to summary judgment and the inquiry ends. <u>Id.</u> However, if the interpretation is "wrong," the Court must then determine whether the Plaintiff has offered a reasonable interpretation. <u>Id.</u> If so, then the next question is whether the Defendant's wrong interpretation is nonetheless reasonable. <u>Id.</u> If this is the case, the Defendant's interpretation is entitled to deference unless there is a conflict of interest.

<u>Boin v. Verizon South, Inc.</u>, 283 F.Supp.2d 1254, 1265 (M.D. Ala. 2003) <u>see</u> <u>also</u> <u>Williams v. Bellsouth Telecommunications, Inc.</u>, 373 F.3d 1132 (11th Cir. 2004)[5]

Cytec contends that plaintiff is not entitled to severance benefits because the plan expressly disqualifies employees who were offered comparable positions by a successor employer. The Severance Plan specifically excludes from the severance policy employees who "were offered but refused to accept another reasonably comparable (in terms of location, compensation, and job level) position with the organization" or "were provided the opportunity

---

[5] The Eleventh Circuit recapitulated the standard for reviewing ERISA claims as follows: Apply the <u>de novo</u> standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.,* the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision. (2) If the administrator's decision in fact is "<u>de novo</u> wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision. (3) If the administrator's decision is "<u>de novo</u> wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard). (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest. (5) If there is no conflict, then end the inquiry and affirm the decision. (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.
<u>Williams</u>, 373 F.3d at 1135 (footnotes omitted).

to be retained by a successor employer."  It is undisputed that Kemira purchased the water
treatment division of Cytec and offered plaintiff a position with Kemira.  Plaintiff argues that the
position offered by Kemira was not for the exact same position, because his position with Cytec
involved responsibilities not only for the water treatment line, but for other divisions of Cytec as
well.   However, the court finds that the position was reasonably comparable because it was at
the same location and compensation doing some of the same duties he was responsible for at
Cytec.  Moreover, the Plan uses the word "or" rather than "and" between the two exclusion
clauses.  Thus, the court finds that the clear language of the Plan does not even require that the
offer of retention by a successor be for a comparable position.  The Plan excludes plaintiff if he
was "provided the opportunity to be retained by a successor employer."  As such, the court finds
that the decision to deny severance payments under the plan was clearly correct.

       Plaintiff contends that the exclusion is unlawful because acceptance of the offer would
result in a waiver of any ADEA claims he might have against Cytec. Neither the APA, nor
Kemira's offer of employment, expressly state that plaintiff must waive any claims against
Cytec.  However, plaintiff maintains that acceptance of Kemira's offer would, nonetheless, result
in his waiver of claims against Cytec.  Plaintiff cites no authority for his position and the court
notes that other courts have found denial of benefits proper under similar exclusionary
provisions. See e.g. Adams v. Thiokol Corp.,  231 F.3d 837, 844 (11th Cir. 2000) (Plan language
denied severance benefits where there is a sale of all or reorganization and the employee accepts
a comparable position with the new company); Weir v. Federal Asset Disposition Ass'n, 123
F.3d 281 (5th Cir. 1997).   For instance, the Fifth Circuit encountered a similar claim in Weir v.
Federal Asset Disposition Ass'n, 123 F.3d 281 (5th Cir. 1997).  In Weir, the plan expressly
denied severance benefits if prior to the time it gave notices of termination of employment, a
"Sale" had occurred and a  "Successor" had made a "Comparable Offer of Employment." Id. at
288.  The district court found, and the Fifth Circuit agreed, that under the language of the plan, a
sale had occurred and that comparable offers of employment were timely made. Id. at 288-289.

Thus, the employees were not entitled to severance benefits under the plan. Id.

Even if the decision was wrong, Cytec's interpretation of the plan was clearly reasonable. Cytec had sole discretion to make the determination, and the court finds that its determination was reasonable.  Plaintiff has not shown that the determination is tainted by Cytec's self-interest, and there has been no evidence or argument that the plan was not applied consistently. Therefore, the court finds that Cytec is entitled to summary judgment as to plaintiff's ERISA claim for severance payments.[6]  Thus, summary judgment will be **GRANTED** in favor Cytec as to **Count Five**.

**G. Cytec's Counterclaim**

In its answer to the original complaint, Cytec asserted a counterclaim alleging that plaintiff has been unjustly enriched and is in breach of contract by receiving retirement and/or severance benefits for which he is not entitled.  Plaintiff later amended his complaint including all previously asserted claims and adding a fifth claim under ERISA.  The Amended complaint was complete and did not refer back to any portion of the original complaint.  Cytec then filed an answer to the amended complaint.  Cytec's answer to the amended complaint did not include a counterclaim but otherwise appeared complete - addressing each and every allegation by plaintiff and asserting affirmative defenses.  The answer to the amended complaint did not refer in anyway to Cytec's previous answer.

The court finds that Cytec does not have a counterclaim pending at this time.  Cytec's answer to the amended complaint was not an amendment of its original answer, but a new answer to the new complaint.  Cytec's answer to the amended complaint did not refer back to or

---

[6] The court notes that defendant also argues that summary judgment should be granted as to Count Four because plaintiff has failed to exhaust his administrative remedies.  Plaintiff contends exhaustion is not fatal to his claim because resorting to the administrative remedies would be futile in this case.  The court finds it unnecessary to address these other issues since the court has found that the claim fails on its merits.

incorporate by reference any portion of Cytec's answer to the original complaint.  Plaintiff's original complaint is no longer pending and any claims asserted in Cytec's answer to the original complaint are now moot.  Thus, the court finds that Cytec currently has no counterclaim.  Thus, plaintiff's motion for summary judgement as to Cytec's **counterclaim** is **MOOT**.

### III. CONCLUSION

For the reasons stated above, the motions of Cytec Industries, Inc. for summary judgment (Docs. 31, 59) are **GRANTED** as to **Counts One, Two, Three** and **Five**.  Cytec's motions for summary judgment are **DENIED** as to **Count Four**, and Cytec's previously asserted **Counterclaim**.  Plaintiff's motion for summary judgment as to Cytec's **Counterclaim** (Doc. 63) is **MOOT**, as Cytec has not asserted a counterclaim in relation to plaintiff's currently pending amended complaint.

**DONE** and **ORDERED** this 31st day of January, 2008.

  /s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE